Thank you. You may be seated. Good morning to all of you, including those I think that are appearing virtually today. Judge McEwen, Judge Bybee, and I are very happy to be here in Seattle. We have a number of submissions today and I'll briefly go through those now. Gaspar Antonio v. Garland is submitted, Garcia Lopez v. Garland is also submitted. We'll take up the remaining cases. We do have a change in order from the first case. We will we'll put that case second and move on to Tarpey v. United States of America. Each side will have 15 minutes. Counsel? Thank you, Your Honor. May it please the court, my name is Sean Morrison and I'm counsel for the appellant in this case, James Tarpey. This case is about an 8.4 million dollar tax penalty that lies in a fraud statute 6700 of the Internal Revenue Code. And the reason we are here today first and foremost is because in this case unequivocally the government has not shown that a false statement has been made with regard to each act or each transaction in which they are imposing a penalty. The government cannot cure that error now on appeal by changing its position by referring to a different statement than what they used before below in justifying that there was a false statement made with each transaction. In the case below, the government argued that the appraisals that were provided to individual donors constituted false statements. That is clear from the record and it is clear from the district court's ruling. On the second hearing, Tarpey's counsel pointed out that that meant there were thousands or at least a thousand transactions in which a donor did not receive an appraisal, a false statement in which was being included in the calculation of the penalty amount. Now that that issue has been raised on appeal, the government appears to recognize the error. They agree now, as they change their position again from where they were below, that this has to be done on a per transaction basis. Each act is an individual sale. That is the quantum the court uses to analyze this particular penalty. Let me ask you, why does it matter what position the government took if on review of this summary judgment we reviewed de novo, so we look at the record to see if it supports the summary judgment? So that's the first part of my question. And then the second part is, what is your position on whether the, I guess I'll call them advertisements, versus the appraisals taken together would meet the standard? Well, let me address the first question, Your Honor. The issue is that the newly proffered false statement here, the advertisement as you call it, we do not have a record that establishes how often or when that was used. In fact, what you see from the record which is cited to this court is that it was used for a brief period of time. That Mr. Tarpey himself did not write that particular communication. In fact, he had not seen it prior to his deposition. That outside counsel, Mark Biskin from a law firm in DC, was involved in writing that particular statement. And if you look at that statement itself, this template email that the government has proffered on appeal, it refers to getting a quote-unquote independent licensed appraiser. The email makes no mention of qualification. The government's brief agrees that these are independent contractors, so the word independent there is not false, and they are all agreed to be licensed appraisers. So we are struggling to see what is false about that particular communication. But additionally, there are facts that have not been developed to show which transactions would be penalized if that was in fact false. Can falsity be proved by the fact that you said that these would be independent licensed appraisers, and they were in fact not independent licensed appraisers? Well, again, the word independent, as used in that email, could refer to the fact that they were independent contractors, which the government agrees with. And then whether, and they were certainly licensed. Nobody's a student. It's certainly a way of saying, we're going to give you, we're going to give you an appraisal. It's going to be done by somebody responsible, so everything is, everything is good here. And everything wasn't good. This was a scheme from start to finish that was designed to avoid some tax consequences. Well, Your Honor, I think I have two responses. First, that the allegation that this is a quote-unquote a scheme writ large is painted with rather broad brushstrokes when we're talking about an 8.4 million penalty that lies in fraud. The individuals that were involved in these transactions believed that they were licensed and qualified under their reading of the regulation, and you are certainly entitled under the Internal Revenue Code to claim a deduction for a donation. We are not talking about a quote-unquote tax shelter where there was no real economic activity. We're talking about one where there was a real donation made to a tax-exempt organization recognized by the IRS, and there was a real transfer of property from the donor to the charity, and then subsequently from the charity to a purchaser. So it's different from, you know, sham tax shelters. It wasn't quite that pristine when you do get into the appraisal so that the donor gets an inflated tax deduction doesn't exactly make this kind of a lily pristine transaction, does it? Well, Your Honor, I appreciate that question because that is the dispute at the heart of this case that has not been put before the court. We do not believe that the appraisals were inflated. You know, as we set forth in our reply brief, timeshares are incredibly difficult to appraise, partially because they sell on two distinct markets. When an individual buys a timeshare from a resort, they frequently spend $10,000, $20,000 on that particular timeshare. If they try to resell it, they get very small amount from the resale value. And the issue would then be if this case had been, for example, a penalty under A2B of 6,700, a penalty for grossly inflating, the issue would be are these appraisals in fact inflated? What we have, what we do know from the record is the government's own analysis showed that some of them were actually undervalued. We also know that in the first case, the injunction case, TARP 1, the court only agreed that 1,787 of the 5,000 appraisals that Broyles did were actually grossly inflated. So if this was an A2B case, a case where the government's allegation is that these are grossly inflated appraisals, we would have material issues of fact, we would dispute that, and certainly the government would be entitled to present its case as to why these were inflated, and TARP would have an opportunity to defend the appraisal methodology. As you'll note, most of these, if not all of these appraisals, were less than what the original donor paid for the timeshare. So if the donor, for example, the particular transaction involving taxpayers, I think they're the grosses, where the timeshare was appraised at $13,000 and sold on eBay for $19, well, the tax form in the record shows that the grosses paid $13,900 for that timeshare. So if an appraiser had come back to them and said this is only worth a hundred bucks, they would have said that's not consistent with what I paid for this, and they certainly bought it in an arm's-length transaction, so that would be part of determining what is fair market value. The real issue here is that we don't, we didn't get to the issue of how to appraise timeshares, which is what I think this case is ultimately about, and we didn't get there because the government decided to take a shortcut, and the shortcut the government took was, rather than try to show these are inflated, because we know that's going to be difficult, that's a different penalty provision, A2B, still 6700, but subsection A2B, they said we're going to just try to show that each of these individuals are disqualified under the regulation, and what I think is somewhat unique about this case is that the government has simultaneously tried to clarify the meaning of a regulation, excuse me, that is not that clear, and impose a 6700 penalty at the same time, and one of the issues we have is this is not the proper position for the government to clarify vague regulations. 6700 is one of the most punitive provisions in the entire Internal Revenue Code. I think at a fairness to taxpayers who are going to be accused and assess these penalties, they should have some prior notice that the government's position on that particular provision. There is no prior case law saying that a recommendation or a marketing or advertisement that includes an appraisal is a use that is disqualifying under that particular subsection of Treasury Regulation 1170, Cap A-13C5, Ruminant 4F, excuse me, it's a long and lengthy regulation, but that's the provision we're talking about, which uses two operative words. An appraiser is disqualified if they are used by or perform appraisals for more than 50% of the same person, and the issue that we have, all of the appraisers here, including the independent contractors, including Mr. Tarpey, did not believe that they were disqualified under that regulation because these appraisals are indisputably used by the donors claiming the deduction, and they perform for those donors, and to the extent the court says, you know, the government has a fair reading of this statute or this provision, let's let the government's reading prevail, I think that raises a really, an even bigger issue than onto the scienter issue here, because the government also has to show that the taxpayer knew or had reason to know that the statement they were making is false, and that's where I think we get into another crux of this case is, if we're talking about an interpretation of regulation that was previously unannounced, the government hasn't shown and really can't show that the taxpayer had reason to know that interpretation would prevail 10 years later in a district court case over liability for section 6700 penalties. Well, if we went back to the district court, I thought that your position there was advice of counsel, therefore the use of this appraisal construct would be legitimate, but now you're saying that the attack should really be on whether they knew or should have known there was a problem with how the government would interpret the regulation. So it seems to me there's a shift that you may have forfeited this argument by not making that argument below, because that would have been something appropriate potentially for the trial court. So can you explain this shift in position and why you think the argument you're now making, whether they knew or should have known, hasn't been forfeited? I appreciate the question again, Your Honor. I think that the issue of reliance on counsel is a response to knew or should have known. So we're still talking about knew or should have known, and it is indisputable that Tarpey raised whether he knew or should have known that this regulation would be interpreted in this particular way. And what Tarpey presented as his evidence to show this disputed fact was, I got this advice from my counsel, which was a summary of the regulations. I saw that summary of the regulations, and I didn't see the government's interpretation here. That is married to the argument he made on the motion for summary judgment explicitly, that they were not disqualified. So those two points together make it pretty clear that Tarpey was contesting the government's regulation, interpretation of the regulation. And I'd also note that the government, when it's making a motion for summary judgment, first has to show that there is no dispute as to a material fact before Tarpey is given an opportunity to dispute that. If you look at their undisputed facts, there's nothing in those undisputed facts that suggests Tarpey would know or have reason to know that these individual appraisers were disqualified at the time that they made their appraisals. And to that point, you know, each of these individual appraisers held themselves out as qualified. They signed a declaration. They were licensed. So Tarpey reasonably would have expected that they would know better than anybody else whether they were qualified. So counsel, are you conceding that Tarpey did not rebut any of the government's evidence that he knew or should have known about the qualifications of the two appraisers? I'm not conceding. I don't see anything in those undisputed facts that goes to that point. I mean, the government... So you would agree that Tarpey did not put forward any response to the summary judgment that the motion that the government brought on this issue of whether or not he knew or should have known? No, Your Honor. I think that he did present argument and he also presented evidence in the record. And where is that evidence? So the evidence in the record is all of the statements that were submitted by both parties that these appraisers... Do you have a citation, counsel? Give me a second. They are cited in the brief, but it is the evidence... I don't have the citation right in front of me. If I come back up on rebuttal, I can try to provide it to you. But the arguments that were made and, excuse me, the testimony by the various parties, including individuals other than Mr. Tarpey, that these appraisals were being done for the donors, that is clearly in the record and that was clearly presented to the court. And in the oral argument below, Tarpey's counsel also very clearly stated that if the government is arguing that these appraisers are each individually disqualified, that raises a material issue of fact. Tarpey contested that he did not know that these individuals would be deemed disqualified. He contested that they were not doing appraisals for the donors. And he presented in the record, the record that we have here on review, ample evidence that shows that these appraisers each saw their work as being done for the donors. So if we accept your theory about each activity under 6700, what is it that the district court would have to do on remand? On remand, the district court would have to hold the government to show which transactions involve false statements. You're talking about a donor by donor inquiry? Well, it's... Inquiry. Yeah. This would be an appraisal by appraisal. So we have like 5,000 appraisals done by Mr. Broyles. We'd have to go through each of those to show which ones were... All the government has to do is show that a false statement was made in connection with the transaction. And that language is taken directly out of the statute. That's A2, which is the false statement part of this. And in most promoter cases, that's not difficult because the offering material itself, for example, when a promoter sells you the idea that the 16th Amendment isn't real, that they're selling you a pamphlet that has a false statement in it. It's not that difficult. In this case, they just need to point out to what they allege the false statement is and limit the penalty to the transactions in which that false statement was actually made. Out of fairness to the taxpayer, I don't think it's appropriate for the government to oppose a penalty on transactions in which there was no false statement. There is no fraudulent conduct there. Okay. And I appreciate the explanation. Now I'm trying to figure out what the district court would have to do on, if we remanded this under your theory. Do you have to go through everything by Thor and Broyles? Do you have to go through both Mr. Tarpey and his sister? Or are there some of those that are sort of off the table that you're willing to consider? Well, on appeal, we're not disputing Tarpey and his sister. But Tarpey and his sister, though, don't have to redo those. But we would have to do everything for Broyles, everything for Thor. Well, first and foremost, it's not that difficult to identify which transactions involved in appraisal. This was a very serious operation, and they kept very strong books and records. So if this, if the false statement is the appraisal, we would know, and we could find that out relatively easily, which one's actually involved in appraisal. And then you would match those up with the other two appraisers? Yeah, we can, we can determine which ones were done by those two appraisers. Again, it's not... If you were to take the advertisement or whatever, which was only used sometimes, that would also be factored in on a remand, if, under your theory? Well, if that's the false statement that the government wants... A false statement. A false statement, then we would look to see which donors received that particular statement. The email record is there. And could that be verified? Do you know who received it? Well, I think we would be able to find it pretty easily. The record is extensive, and the government has copies of all of the emails that were sent in and out of these parties. Was this a mass mailing? The record doesn't show that, because this wasn't the alleged false statement below. What the record shows is it was used for a brief period of time. You've used up all your time, but if we'll put one minute back on the clock for rebuttal. Thank you. I appreciate that, your honor. Thank you. Good morning. May it please the court. Judith Hagley from the Department of Justice, representing the United States. Let me begin with responding to the last question you asked Judge Biby about what would the court need to do if the false statements were limited to the appraisals, transactions with appraisals, which for a number of reasons we disagree with, but let me just start with that. There would be no need for a remand, because the transactions that actually had appraisals are sufficient to support the penalty in this case. In Tarpey's reply brief, he notes that $3 million of the gross income is attributable to transactions that lacked an appraisal. The gross income in this case was determined to be $22.3 million, and if you subtract $3 million from that, it results in over $19 million, which is more than enough to support the penalty. You only need $16.9 to support the penalty. I'm throwing out a lot of numbers. These are in our brief. But Tarpey's complaint regarding transaction without appraisals is not only relevant because it doesn't change the outcome in this case, it is legally unsupported, because as this court made clear in the state preservation, a taxpayer need not actually rely on the false statement that a promoter makes for a promoter to be liable. It is enough that the promoter organize and sell a transaction that involves the false statement. Taxpayer reliance is not an element. In fact, the government doesn't even need to show if there's been any harm to the treasury. The target of this penalty is on promoters who are selling abusive schemes and making false statements. Could you stop there? I wanna make sure I understand your argument. So you're saying, well, it doesn't really matter that 3 million of these lacked appraisals simply because the representation was made that there would be a qualified appraisal? No, no, no. What I'm saying is that most of the transactions actually involved an appraisal, 87%. And that Tarpey himself acknowledges that only at most... 22 minus 3. Exactly. That would be enough to support the penalty in this case. But the government... Tarpey talks about the government changing positions. The government has not changed position. It relied on both the way that the statements that Tarpey... General statements that Tarpey made about his qualified appraisal practice, statements that were in the promotional materials submitted with a summary judgment motion, as well as specific statements and appraisals that were first. The district court noticed this on page 55 and 57 of the first volume, the excerpt of record, the court said, recognized that there were false statements were made about the appraisal practice. In addition, the parties focused on the false statements that were in the appraisals themselves because so many of them had appraisals. And as I mentioned before... I'm still a little confused by the government's position because it does seem on appeal that there is a somewhat of a shift, maybe not a title shift, but a shift to saying, oh, and by the way, we can rely on these broad... I'll call them advertisements, I'm not sure. The promotions. Circulars or promotions. Right. Based on what you just told me, you wouldn't need to go that route. So why does the government then come in and say, well, we not only have the appraisals, but then we have these promotions? Well, the government frequently in cases relies on how a transaction is promoted. And we did rely on how the transaction was promoted here in the template email. But we don't need that. But if you have to have it tied to a specific activity or transaction and you can't really do that with these promotions, isn't that true at this state? I mean, some people got them, some people didn't, they weren't always used. Well, it's not... I don't have to show that taxpayers actually received it. It was part of the promotion. The statement was made as part of the organization and selling of the transaction. And it was unsputed that... You're saying it doesn't... I mean, there's a difference between getting it and relying on it and just getting it. So you're saying it doesn't even matter if they got it? Well, I mean, they did get... I'm saying that they didn't have to show they relied on it. Sure. But not everybody got it. So that's why there's this mixing and matching on the numbers here. And he says, well, you know, you really need... If you're gonna go that route, you need to go back on a remand. And you're saying you don't. So what... Well, we do not... Is the concrete evidence that supports the penalty that's now on appeal? So the penalty on appeal is supported by the transactions that... For which there is no dispute, if there was an appraisal. 6,576. Those transactions, again, 87% of all the times for loans support the penalty in this case. Because it generates, using TARPAY's own number, at least 19 million in gross income. And that amount is enough to support the penalty in this case. One brief point about valuation, that has not been litigated in this case. We talked about, in the injunction case, only some small number of 1,500 or something was determined to be grossly overvalued. That was an injunction case, and the government just demonstrated there was a large enough number to convince the court that there was enough damage to the Treasury that there needed to have an injunction. That case, valuations are fact specific, and the government chose not to make a shortcut, but to move for summary judgment on the basis of the grounds of the false statement, because there were no disputes of... Genuine disputes of fact. So guard to there being no prior case law on the requirement for there to be prior case law on a statute or regulation before the penalty can go high. In the state preservation, this court determined that there was a false statement that the promoter knew or had reason to know should have been... Was false, relying just on the plain language of the code without regard to there being prior guidance. Now, in arguing that there needed to be prior guidance, Mr. TARPAY relies on criminal cases, criminal penalties, and criminal tax evasion charges. And this court in the state preservation distinguished the very case that he relies on, the Dahlstrom case, saying it's a different standard of review, or standard of liability. In a criminal case, you do need to show, the government does need to show, a willful violation of a known legal duty. In contrast, under 6700, the government need only demonstrate that there was reason to know that a statement would be false. Unless there are any other questions? Governor, thank you. Thank you very much. I ask that the district court's decision be affirmed. I think we have one minute on the clock for your rebuttal. Thank you, and I appreciate that again, Your Honor. A couple quick points. The government is arguing that the $3 million that would be reduced from gross income is immaterial. This is, again, very large penalty, and they don't get... I don't think the government should be entitled to fudge it in a case like this. That $3 million, in addition to the issues that we raise on the computation of gross income, would significantly reduce the overall penalty. So each of these issues is material. I disagree with counsel about reliance. I agree with Judge McKeown here that reliance means that the taxpayer received the statement but didn't rely on it. The government doesn't have to show that they relied on a statement they received. But the government, at the least, has to show that the promoter made the statement or that the individual received it. I think the case law is fairly clear on that. As to the argument that there doesn't need to be prior case law to resolve ambiguous statutes, again, this is a fraud penalty. The standard is new or should have known. It does not include a penalty. And in the State Preservation Services, like almost all promoter cases, the court discussed at length the prior case law establishing that rule. Thank you for your time. I appreciate it. Thank you, counsel. This case will be submitted.
judges: McKEOWN, BYBEE, DESAI